## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CASEY MORELL and RAYMOND OSORIO, on behalf of themselves and others similarly situated, <br><br>            Plaintiffs, <br><br>      v. <br><br> NYC GREEN TRANSPORTATION GROUP, LLC, NURIDE TRANSPORTATION GROUP, LLC, DOES NOS. 1-25 and JOHN/JANE DOES NOS. 1-10. <br><br>            Defendants. | Civil Case No.:   1:18-cv-918 <br><br> **COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Casey Morell and Raymond Osorio, on behalf of themselves and others similarly situated, by and through their attorneys, Faruqi & Faruqi, LLP, hereby allege as follows:

## NATURE OF THE CLAIMS

1.      Ms. Morell and Mr. Osorio, on behalf of themselves and all other similarly situated individuals who have been employed by Defendants as Drivers at any time during the full statute of limitations period, bring this action against Defendants pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the New York Labor Law, N.Y. Lab. Law §§ 190 and 650, *et seq.* ("NYLL").

2.      Defendants operate a private taxi service throughout New York City under the names "Go Green" and "La Puma."

3.      Defendants engage in a willful and deliberate policy and practice of failing to compensate Plaintiff and other similarly situated Drivers for all hours worked, thereby denying them owed straight-time and overtime compensation.

4.      Specifically, Defendants consistently reduce the number of hours worked that Plaintiffs and similarly situated Drivers log when calculating their bi-weekly paychecks, without providing any explanation for doing so.

5.      Further, Defendants regularly tender these shorted paychecks to Plaintiffs and similarly situated Drivers well after their regularly scheduled pay days, often failing to pay them for more than a week after the checks are due.

6.      Even worse, Defendants force Plaintiffs and similarly situated Drivers to wait at Defendants' headquarters, off-the-clock, to receive their paychecks.  Plaintiffs and similarly situated Drivers sometimes wait as long as five hours, only to leave without a paycheck and be told to return the following day to wait all over again.

7.      Defendants also fail to provide Plaintiffs and similarly situated Drivers meal breaks required by law, but still deduct time purportedly spent on meal breaks from Plaintiffs' and similarly situated Drivers' total hours worked each pay period.

8.      Defendants also consistently fail to provide Plaintiffs and similarly situated Drivers with accurate earnings statements.

9.      Plaintiffs' claims against Defendants to redress these wrongs are brought, in part, under the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), and applicable regulations thereunder, on behalf of themselves and all other similarly situated persons employed by Defendants as Drivers at any time during the full statute of limitations period.

10.     Plaintiffs' claims are also brought, in part, under the NYLL, and applicable regulations thereunder, as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves and all other similarly situated persons employed by Defendants as Drivers at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

11.     Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

12.     This Court also has supplemental jurisdiction over Plaintiffs' related claims arising under State and/or local law pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 as Defendants' principal place of business is located in this district.

## PARTIES

**A.      Plaintiff Casey Morell**

15.     Plaintiff Casey Morell is a resident of the State of New York and has been employed by Defendants as a Driver from on or around January 2, 2017 through the present.

16.     At all relevant times, Ms. Morell was an "employee" of Defendants within the meaning of NYLL §§ 190, 651 and all applicable statutes and regulations.

**B.      Plaintiff Raymond Osorio**

17.     Plaintiff Raymond Osorio is a resident of the State of New York and has been employed by Defendants as a Driver from on or around February 7, 2017 through the present.

18.     At all relevant times, Mr. Osorio was an "employee" of Defendants within the meaning of NYLL §§ 190, 651 and all applicable statutes and regulations.

**C.     Defendant NYC Green Transportation Group, LLC**

19.     Defendant NYC Green Transportation Group, LLC is a domestic limited liability company with its principal place of business located at 33-24 Northern Boulevard, Long Island City, New York 11101.

20.     At all relevant times, NYC Green Transportation Group, LLC, along with the remaining Defendants, jointly employ Plaintiffs and all similarly situated Drivers.

21.     NYC Green Transportation Group, LLC controls Defendants' operations, policies, and practices in a joint fashion without any meaningful distinctions among it and the other persons, subsidiaries, and/or related entities described herein.

22.     NYC Green Transportation Group, LLC and the remaining Defendants operate as a common enterprise such that the actions of NYC Green Transportation Group, LLC or any one of the other persons, subsidiaries, and/or related entities described herein may be imputed to the other(s) and/or they operate as joint employers within the meaning of all relevant statutes.

23.     At all relevant times, NYC Green Transportation Group, LLC controlled and directed the terms of employment and compensation of Plaintiffs and all similarly situated Drivers.

24.     At all relevant times, NYC Green Transportation Group, LLC maintained and exercised its power to hire, fire, discipline, and promote Plaintiffs and all similarly situated Drivers.

25.     At all relevant times, NYC Green Transportation Group, LLC maintained control, oversight, and direction of Plaintiffs and all similarly situated Drivers, including timekeeping, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

26.     At all relevant times, NYC Green Transportation Group, LLC was an "employer" within the meaning of NYLL §§ 190, 651 and all applicable statutes and regulations.

**D.     Defendant NuRide Transportation Group, LLC**

27.     Defendant NuRide Transportation Group, LLC is a domestic limited liability company with its principal place of business located at 33-24 Northern Boulevard, Long Island City, New York 11101.

28.     At all relevant times, NuRide Transportation Group, LLC, along with the remaining Defendants, jointly employed Plaintiffs and all similarly situated Drivers.

29.     NuRide Transportation Group, LLC controls Defendants' operations, policies, and practices in a joint fashion without any meaningful distinctions among it and the other persons, subsidiaries, and/or related entities described herein.

30.     NuRide Transportation Group, LLC and the remaining Defendants operate as a common enterprise such that the actions of NuRide Transportation Group, LLC or any one of the other persons, subsidiaries, and/or related entities described herein may be imputed to the other(s) and/or they operate as joint employers within the meaning of all relevant statutes.

31.     At all relevant times, NuRide Transportation Group, LLC controlled and directed the terms of employment and compensation of Plaintiffs and all similarly situated Drivers.

32.     At all relevant times, NuRide Transportation Group, LLC maintained and exercised its power to hire, fire, discipline, and promote Plaintiffs and all similarly situated Drivers.

33.     At all relevant times, NuRide Transportation Group, LLC maintained control, oversight, and direction of Plaintiffs and all similarly situated Drivers, including timekeeping, work allocation, task supervision, monitoring work product, payroll, and other employment practices that applied to them.

34.     At all relevant times, NuRide Transportation Group, LLC was an "employer" within the meaning of NYLL §§ 190, 651 and all applicable statutes and regulations.

**E.     Defendants Does Nos. 1-25**

35.     Plaintiffs do not know the true names and capacities of corporate Defendants Does Nos. 1 through 25, and for that reason sue Does Nos. 1 through 25 under fictitious names.

36.     Plaintiffs are informed and believe that Does Nos. 1 through 25 are parent companies and/or subsidiary companies of Defendants NYC Green Transportation Group, LLC and NuRide Transportation Group, LLC.

37.     Does Nos. 1 through 25 have a unity of interest and ownership with Defendants NYC Green Transportation Group, LLC and NuRide Transportation Group, LLC such that the separate personalities of those entities and Does Nos. 1 through 25 do not exist.

38.     At all relevant times, Does Nos. 1 through 25 were "employers" within the meaning of NYLL §§ 190, 651 and all applicable statutes and regulations.

39.     At all relevant times, Does Nos. 1 through 25, along with the remaining Defendants, jointly employed Plaintiff and all similarly situated Drivers.

**F.     <u>Defendants John/Jane Does Nos. 1-10</u>**

40.     Plaintiffs do not know the true names and capacities of individual Defendants John/Jane Does Nos. 1 through 10, and for that reason sues John/Jane Does Nos. 1 through 10 under fictitious names.

41.     Plaintiffs are informed and believe that John/Jane Does Nos. 1 through 10 are individual investors in Defendants NYC Green Transportation Group, LLC and NuRide Transportation Group, LLC, as well as Defendants Does Nos. 1 through 25.

42.     John/Jane Does Nos. 1 through 10 exercised control over Defendants' operations and employment policies and practices, including, without limitation, dictating the compensation and classification of Plaintiffs and all similarly situated Drivers.

43.     At all relevant times, John/Jane Does Nos. 1 through 10 controlled when Plaintiffs' and all similarly situated Drivers were paid wages owed to them.

44.     John/Jane Does Nos. 1 through 10 regularly withhold money from the corporate Defendants in order to exercise control over Defendants' employment practices, particularly with respect to compensation, thereby delaying payment of wages owed to Plaintiffs and all similarly situated Drivers.

45.     At all relevant times, John/Jane Does Nos. 1 through 10 were "employers" within the meaning of NYLL §§ 190, 651 and all applicable statutes and regulations.

46.     At all relevant times, John/Jane Does Nos. 1 through 10, along with the remaining Defendants, jointly employed Plaintiff and all similarly situated Drivers.

## FACTS

**A.      Background**

47.     Defendants operate a taxi service throughout New York City under the names "GoGreenRide" and "La Puma."

48.     Drivers who are given energy-efficient vehicles operate under the name "GoGreenRide," while drivers in other types of vehicles operate under "La Puma."

49.     However, the distinction between "GoGreenRide" and "La Puma" is nothing more than a marketing strategy.

50.     Defendants own and operate both brands as a single entity, subject all Drivers to the same employment and compensation policies, and exert the same control over all Drivers irrespective of their brand designations.

51.     In order to begin their shifts each day, Drivers log in to an online scheduling and timekeeping system called "Humanity."

52.     Once logged into Humanity, Drivers are dispatched rides from Defendants and are required to complete all rides they are assigned.

53.     Humanity tracks, among other things, Drivers' schedules and hours worked.

54.     Defendants pay Drivers bi-weekly, with each 14-day pay period spanning from Monday to Sunday.

55.     Defendants designated the Thursday following each 14-day pay period as Drivers' regularly scheduled pay day.

56.     Throughout the majority of the statutory period, Drivers have been paid as full-time, Form W-2 employees.

57.     In or around December 2017, Defendants' began to report Drivers' income on Form 1099s, designed for independent contractors, in apparent effort to avoid liability for the various wage violations discussed below.

**B.     Failure to Pay Drivers for All Hours Worked**

58.     Throughout the statutory period, Defendants have systematically failed to pay Drivers for all hours worked.

59.     As a result of Defendants' pattern and practice, Drivers have been denied minimum and overtime wages.

60.     Defendants' unlawful practice is easily revealed by cross-referencing Drivers' Humanity records with their pay stubs and earnings statements.

61.     These records reflect that Drivers routinely work more than 20 hours than what is listed on their pay stubs and earnings statements.

62.     Even when factoring in deductions for meal breaks (which are not itemized on earnings statements and, as discussed below, are not actually given to Drivers), all of Drivers' hours worked are still not accounted for.

**C.     Late Payment of Wages and Off-the-Clock Work**

63.     Defendants do not offer to mail paychecks to Drivers.

64.     With the exception of a very brief period in 2017, Defendants do not offer to pay their Drivers via direct deposit.

65.     Instead, Drivers are required to pick up their paychecks at Defendants' office, which is located at 33-24 Northern Boulevard, Long Island City, New York 11101 (the "Corporate Office").

66.     When they arrive at the Corporate Office, Drivers almost never receive their paychecks in a timely fashion.

67.     On the contrary, Drivers are routinely required to wait anywhere from one to five hours at the Corporate Office before receiving their paychecks.

68.     Moreover, after several hours of waiting for their paychecks, Drivers are frequently informed that Defendants do not have their paychecks ready.

69.     Drivers are then forced to leave without being paid, and return on a different day in order to receive their paychecks.

70.     On some occasions, Defendants still do not have the paychecks ready when the Drivers return.

71.     Indeed, Defendants have a company-wide policy of paying Drivers "at random," meaning that Defendants will prepare only a small number of paychecks – typically around 30 – that are tendered to Drivers.

72.     The remaining Drivers are forced to wait additional time for their paychecks.

73.     What is more, Drivers are not compensated for time they are forced to spend at Defendants' office waiting for their paychecks.

74.     This results in Drivers being forced to work off-the-clock from anywhere between one and five hours per pay period.

**D.      Failure to Pay for Meal Breaks**

75.     At the outset of their employment with Defendants, Drivers are told that, roughly three to six hours into their shifts, they will be notified by Defendants to take a lunch break via a cloud-based application called "MediRoutes."

76.     Drivers are further promised that, once MediRoutes notifies them to take a break, they will be given a 30-minute to one-hour time period (depending on the length of the given shift) to eat their lunches uninterrupted.

77.     Put simply, Defendants do not honor these promises or remotely follow the practice described above.

78.     Indeed, while Defendants invariably deduct time for meal breaks out of Drivers' total hours worked, Drivers are not actually given meal breaks.

79.     Instead of receiving a notification to take a meal break, Drivers are instructed to find time between rides to eat.

80.     Drivers are also strictly prohibited from eating inside of their vehicles.

81.     Accordingly, Drivers are forced to pull over and eat outside of their vehicles between rides.

82.     Still, these breaks are not uninterrupted.

83.     Rather, Drivers are subject to be dispatched a ride at any time during their meal, which happens frequently.

84.     Once dispatched, the Drivers are required to respond immediately.

85.     Despite never receiving actual lunchbreaks, time for purported "meal breaks" is deducted from Drivers' paychecks.

**E.      Failure to Provide Accurate Earnings Statements**

86.     Throughout the entire statutory period, Defendants have rarely issued proper earnings statements to Drivers.

87.     Even on the rare occasions when Defendants have provided earnings statements to Drivers, the earnings statements have been inaccurate and consistently reflect that the Drivers worked fewer hours than they actually worked.

88.     The inconsistencies between the earnings statements Defendants issue and the number of hours Drivers actually work is easily proven by cross-referencing the wage statements with the Drivers' hours logged in Humanity.

89.     As noted above, Defendants require that Drivers pick up hard copy paychecks in person, and Defendants do not provide any means through which Drivers may access electronic pay stubs or earnings statements online.

**F.       Plaintiff Casey Morell**

90.       Ms. Morell has been employed by Defendants as a Driver from on or around January 2, 2017 through the present.

91.       Ms. Morell drives a La Puma car.

92.       Ms. Morell typically works between 40 and 60 hours per week.

93.       In order to begin her shift each day, Ms. Morell logs in to Humanity.

94.       Once she is logged in, she is dispatched rides, which she is required to complete.

95.       Ms. Morell is scheduled to be paid bi-weekly, with each 14-day pay period spanning from Monday to Sunday.

96.       Ms. Morell is regularly denied minimum and overtime wages as a result of Defendants' reduction of the hours worked reflected in her regular paychecks.

97.       By way of example only, during the pay period spanning from June 5, 2017 through June 18, 2017, Ms. Morell's Humanity records reflect that she worked 69 hours and 20 minutes, including four hours and six minutes of overtime work during the first half of the pay period.

98.       Conversely, Ms. Morell's earnings statement for the same pay period reflects that she purportedly worked only 55.56 straight-time hours, and only 1.35 overtime hours.

99.       Defendants have never offered to mail Ms. Morell her paychecks, and only allowed her to participate in a direct deposit program for a brief period in 2017.

100.      Instead, she is required to pick up her paychecks at the Corporate Office.

101.      When Ms. Morell arrives at the Corporate Office, she almost never receives her paycheck in a timely fashion.

102.      Ms. Morell regularly sits at the Corporate Office alongside other Drivers as they all wait for hours in the hopes of receiving their paychecks.

103.    On numerous occasions, after waiting at Defendants' Office for several hours with other Drivers, Ms. Morell and these other Drivers are informed that their paychecks are "not ready" and that they would have to come back a few days later and continue to wait.

104.    Members of management at Defendants have repeatedly told Ms. Morell and other Drivers that Defendants have a company-wide policy of paying Drivers "at random."

105.    Defendants repeatedly explain that they only allocate a certain amount of money to pay Drivers each pay period and that this amount of money is not enough to pay all of their Drivers. Therefore, Defendants explain that they select "at random" the Drivers that will actually receive a paycheck each pay period.

106.    Defendants frequently explain that their Company policy is to issue only a small number of paychecks each pay period, and the Drivers not selected to be paid would have to have to wait several days after their regularly scheduled pay day, to receive their paychecks.

107.    Indeed, after hours of waiting for her paycheck, Ms. Morell is frequently informed that she was not one of the lucky "randomly selected" Drivers to be given her paycheck that day and is instructed to come back and continue to wait for her check several days later.

108.    By way of example only, on Monday, September 18, 2017, Ms. Morell waited at the Corporate Office for her check for approximately four hours, as she was made aware that Drivers would be paid "at random" that day.

109.    Ms. Morell did not receive a paycheck, despite the fact that it had already been nearly a week overdue at that point.

110.    On Wednesday, September 20, 2017, Ms. Morell returned to the Corporate Office to receive her check, but after several additional hours of waiting, she again left without a paycheck.

111.   It was not until Thursday, September 21, 2017 – and after nearly 10 hours of cumulative waiting time at the Corporate Office – that Ms. Morell received her paycheck.

112.   Ms. Morell's paycheck was eight days late and did not compensate her for the time she was required to spend at Defendants' Corporate office waiting to receive her paycheck.

113.   In fact, Ms. Morell has never been compensated for time she spends waiting for her paycheck at Defendants' office.

114.   In Ms. Morell's experience, even Drivers who are paid "at random" are still almost always paid multiple days after their regularly scheduled paydays.

115.   This results in her working approximately two to ten hours off-the-clock every per pay period.

116.   When she began working for Defendants, Ms. Morell was told that she would be notified to take lunch breaks once per day by MediRoutes, after which she would be given 30 minutes to one hour (depending on the length of her shift) to eat her lunch uninterrupted.

117.   This practice is not followed.

118.   Instead, despite her wages being deducted for meal breaks, Ms. Morell struggles to find time to eat between rides, and is often interrupted mid-meal to pick up a customer.

119.   Ms. Morell is rarely issued earnings statements with her paychecks.

120.   When she does receive earnings statements, they are invariably inaccurate, as they do not reflect her actual hours worked.

121.   Defendants have never offered Ms. Morell a means of accessing earnings statements electronically.

**G.     Plaintiff Raymond Osorio**

122.    Mr. Osorio has been employed by Defendants as a Driver from on or around February 7, 2017 through the present.

123.    Mr. Osorio drives a GoGreen car.

124.    Ms. Osorio typically works between 40 and 60 hours per week.

125.    In order to begin his shift each day, Mr. Osorio logs in to Humanity.

126.    Once he is logged in, he is dispatched rides, which he is required to complete.

127.    Mr. Osorio is scheduled to be paid bi-weekly, with each 14-day pay period spanning from Monday to Sunday.

128.    Mr. Osorio is regularly denied minimum and overtime wages as a result of Defendants' reduction of the hours worked reflected in his regular paychecks.

129.    Defendants have never offered to mail Mr. Osorio his paychecks, and only allowed him to participate in a direct deposit program for a brief period in 2017.

130.    Instead, he is required to pick up his paychecks at the Corporate Office.

131.    When Mr. Osorio arrives at the Corporate Office, he almost never receives his paycheck in a timely fashion.

132.    Mr. Osorio regularly sits at the Corporate Office alongside other Drivers as they all wait for hours in the hopes of receiving their paychecks.

133.    On numerous occasions, after waiting at Defendants' Office for several hours with other Drivers, Mr. Osorio and these other Drivers are informed that their paychecks are "not ready" and that they would have to come back a few days later and continue to wait.

134.    Members of management at Defendants have repeatedly told Mr. Osorio and other Drivers that Defendants have a company-wide policy of paying Drivers "at random."

15

135.    Defendants have explained to Mr. Osorio that they only allocate a certain amount of money to pay Drivers each pay period and that this amount of money is not enough to pay all of their Drivers.  Therefore, Defendants explain that they select "at random" the Drivers that will actually receive a paycheck each pay period.

136.    Defendants frequently explain to Mr. Osorio and other Drivers that their Company policy is to issue only a small number of paychecks each pay period, and the Drivers not selected to be paid would have to have to wait several days after their regularly scheduled pay day, to receive their paychecks.

137.    Indeed, after hours of waiting for his paycheck, Mr. Osorio is frequently informed that he was not "randomly selected" to be given his paycheck that day and is instructed to come back and continue to wait for his check several days later.

138.    By way of example only, as of January 5, 2018, Mr. Osorio had only been paid one of his two paychecks he was owed for the month of December 2017.

139.    Even the check Mr. Osorio did receive within December 2017 was tendered to him late.

140.    On January 5, 2018, Mr. Osorio waited at Defendants' Corporate Office for multiple hours, off-the-clock, and was told that the second December paycheck that he was owed was "not ready."

141.    When Mr. Osorio further complained to Defendants about their continued non-payment of his second December paycheck, Defendants instructed Mr. Osorio to come back to the Corporate Office on January 8, 2018 and again wait for his second check.

142.    As instructed, on January 8, 2018 Mr. Osorio returned to Defendants' Corporate Office and proceeded to wait for multiple hours, off-the-clock, before he was once again told that his second December paycheck was still "not ready."

143.    In fact, Mr. Osorio was not given his second December paycheck until January 12, 2018.

144.    Mr. Osorio's paycheck was nearly two weeks late and did not compensate him for the time he was required to spend at Defendants' Corporate office waiting to receive his paycheck.

145.    In fact, Mr. Osorio has never been compensated for time he spends waiting for his paycheck at Defendants' office.

146.    In Mr. Osorio's experience, even Drivers who are paid "at random" are still almost always paid multiple days after their regularly scheduled paydays.

147.    This results in Mr. Osorio working approximately two to ten hours off-the-clock every pay period.

148.    When he began working for Defendants, Mr. Osorio was told that he would be notified to take lunch breaks once per day by MediRoutes, after which he would be given 30 minutes to one hour (depending on the length of his shift) to eat his lunch uninterrupted.

149.    This practice is not followed.

150.    Instead, despite his wages being deducted for meal breaks, Mr. Osorio struggles to find time to eat between rides, and is often interrupted mid-meal to pick up a customer.

151.    Mr. Osorio was rarely issued earnings statements with his paychecks.

152.    When he did receive earnings statements, they were invariably inaccurate, as they did not reflect his actual hours worked.

153.    Defendants have never offered Mr. Osorio a means of accessing earnings statements electronically.

## FLSA COLLECTIVE ACTION ALLEGATIONS

154.    Plaintiffs bring this action, in part, as a collective action under the FLSA and applicable regulations thereunder.

155.    Plaintiffs seeks to maintain claims, pursuant to FLSA § 216(b), on behalf of themselves and all other similarly situated persons who have been employed by Defendants as Drivers during the full statute of limitations period (the "FLSA Collective").

156.    At all relevant times, Plaintiffs and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, plans, and scheme, and were subject to Defendants' practices of: (i) failing to compensate Plaintiffs and the FLSA Collective for all hours worked, thereby denying them straight-time and overtime wages owed; (ii) failing to timely pay wages owed; (iii) failing to compensate Plaintiffs and the FLSA Collective for time spent waiting to receive their paychecks; and (iv) making unlawful deductions from wages for time spent on meal breaks, even where no meal break is provided.

157.    Throughout the full statute of limitations period, Defendants have been fully aware of the duties performed by Plaintiffs and the FLSA Collective, and that those duties were not exempt from the provisions of the FLSA.

158.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

159.     As a result of Defendants' conduct, Defendants are liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid wages, with interest, plus an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

160.     While the exact number of the FLSA Collective is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are approximately one hundred and fifty (150) other similarly situated persons who were employed by Defendants as Drivers during the full statute of limitations period.

161.     Plaintiffs are currently unaware of the identities of the members of the FLSA Collective.

162.     Accordingly, Defendants should be required to provide Plaintiffs with a list of all persons employed by Defendants as Drivers during the full statute of limitations period, along with their last known addresses, telephone numbers, and email addresses, so Plaintiffs can give the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

## NYLL CLASS ACTION ALLEGATIONS

163.     Plaintiffs also bring this action, in part, as a class action under the NYLL and applicable regulations thereunder.

### A.     Class Definition

164.     Plaintiffs seek to maintain claims, pursuant to FRCP 23, on behalf of themselves and a class of all other similarly situated persons who have been employed by Defendants as Drivers during the full statute of limitations period (the "NYLL Class").

165.     Plaintiffs allege, on behalf of themselves and the NYLL Class that Defendants violated, *inter alia*, the NYLL by: (i) failing to compensate Plaintiffs and the NYLL for all hours worked, thereby denying them straight-time and overtime wages owed; (ii) failing to timely pay wages owed; (iii) failing to compensate Plaintiffs and the NYLL Class for time spent waiting to receive their paychecks; (iv) making unlawful deductions from wages for time spent on meal breaks, even where no meal break is provided; and (v) failing to provide accurate wage statements.

166.     Plaintiff and the NYLL Class have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

167.     The wage practices described in this Complaint are part of Defendants' normal course of conduct.

168.     The claims brought pursuant to the NYLL may be pursued by all similarly situated persons who do not opt out of the NYLL Class, pursuant to FRCP 23.

**B.     Numerosity and Impracticability of Joinder**

169.     The members of the NYLL Class are so numerous that joinder of all members is impracticable.

170.     While the exact number of the members of the NYLL Class is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are approximately one hundred and fifty (150) members of the NYLL Class.

171.     Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**C.     Common Questions of Law and Fact**

172.     Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the NYLL Class and predominate over any questions only affecting the members of the NYLL Class individually.

173.    Indeed, there are few, if any, purely individual issues in this action.

174.    The questions of law and fact that are common to Plaintiffs and the NYLL Class include, but are not limited to:

(a)    whether Plaintiffs and the NYLL Class worked over 40 hours per week;

(b)    whether Defendants failed to pay Plaintiffs and the NYLL Class all straight-time compensation owed to them;

(c)    whether Defendants failed to pay Plaintiffs and the NYLL Class all overtime compensation owed to them;

(d)    whether Defendants failed to timely pay Plaintiffs and the NYLL their owed wages;

(e)    whether Plaintiffs and the NYLL Class are entitled to compensation for time spent waiting to receive their paychecks;

(f)    whether Plaintiffs and the NYLL Class are entitled to compensation for unlawful deductions for meal breaks;

(g)    whether Defendants failed to provide accurate earnings statements to Plaintiffs and the NYLL Class; and

(h)    whether Plaintiffs and the NYLL Class are entitled to liquidated damages and injunctive relief.

175.    Therefore, the common question requirement of FRCP 23(a) is satisfied.

**D.    Typicality of Claims and Relief Sought**

176.    Plaintiffs' claims are typical of the claims of the members of the NYLL Class they seek to represent.

177.    Plaintiffs and the NYLL Class work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

178.    The wage practices suffered by Plaintiffs, and the damages resulting therefrom, are sadly typical of Defendants' treatment of Drivers generally, and of the NYLL Class specifically.

179.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**E.      Adequacy of Representation**

180.    Plaintiffs will fairly and adequately protect the interests of the NYLL Class because their interests are coextensive and aligned with those of the members of the NYLL Class.

181.    Plaintiffs have no interests adverse to the NYLL Class they seek to represent, and have retained competent and experienced counsel.

182.    Plaintiffs are willing and able to represent the NYLL Class as fairly and vigorously as they pursue their similar individual claims.

183.    Plaintiffs have retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the demands necessary to litigate a class action of this size and complexity.

184.    The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual and NYLL Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**F.      Requirements of Rule 23(b)(1)**

185.    Without certification of the NYLL Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

186.    Accordingly, certification of the NYLL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the NYLL Class, and Defendants.

187.    By filing this Complaint, Plaintiff is preserving the rights of the NYLL Class with respect to the statute of limitations on their claims.

188.    Therefore, not certifying a class would substantially impair and/or impede the remaining members of the NYLL Class's ability to protect their interests.

## G.    Requirements of Rule 23(b)(2)

189.    Defendants acted on grounds, described herein, generally applicable to Plaintiffs and the NYLL Class by denying Plaintiffs and the NYLL Class minimum and overtime wages, failing to pay wages on time, and failing to provide accurate earnings statements.

190.    These acts are not sporadic or isolated, and support the request for final injunctive and declaratory relief with respect to Plaintiffs and the NYLL Class as a whole.

191.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, minimum and overtime wages, timely payment of wage, and accurate earnings statements.

192.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs and the NYLL Class's entitlement to monetary and non-monetary remedies for such wage violations.

193.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

## H. Requirements of Rule 23(b)(3)

194. The common issues of fact and law affecting Plaintiffs' claims and those of the NYLL Class – including, but not limited to, the common issues identified in the paragraphs above – predominate over issues affecting only individual claims.

195. A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and the claims of the NYLL Class.

196. The cost of proving Defendants' pattern and practice of denying overtime and other wages to Drivers makes it impractical for the members of the NYLL Class to pursue their claims individually.

197. This class action will not be difficult to manage for reasons including, but not limited to, the discrete organizational nature of all members of the NYLL Class (they must have worked for Defendants as Drivers), as well as the common questions of law and fact described herein.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FLSA:  FAILURE TO PAY MINIMUM WAGE

198. Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

199. Plaintiffs and the FLSA Collective are employees under the FLSA and all other applicable statutes or regulations.

200. Defendants are employers under the FLSA and all other applicable statutes or regulations.

201. The FLSA requires covered employers, including Defendants, to compensate employees at least the federal minimum wage for all hours worked under 40 hours in a workweek.

202.     Plaintiffs and the FLSA Collective were not exempt from the requirement that their employer pay them the federal minimum wage, and thus they are entitled to be paid at least the federal minimum wage for all hours worked under 40 hours in a workweek during the full statute of limitations period.

203.     Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the FLSA Collective at least the federal minimum wage for all hours worked under 40 hours in a workweek.

204.     Defendants denied Plaintiffs and the FLSA Collective minimum wages in at least three ways.

205.     First, Defendants engaged in a pattern and practice of unlawfully reducing Plaintiffs' and the FLSA Collective's recorded hours worked when issuing paychecks, as reflected by comparing Plaintiffs' and the FLSA Collective's Humanity records with their earnings statements.

206.     Second, Defendants engaged in a policy and practice of requiring Plaintiffs and the FLSA Collective to perform compensable work off-the-clock, including, *inter alia*, by requiring Plaintiffs and the FLSA Collective to wait to receive their paychecks in person.

207.     Third, Defendants engaged in a policy and practice of unlawfully deducting from Plaintiffs' and the FLSA Collective's hours worked for time spent taking meal breaks, even where no such meal breaks were given.

208.     As a result of Defendants' failure to compensate Plaintiffs and the FLSA Collective at least the federal minimum wage for all hours worked under 40 hours in a workweek, Defendants have violated, *inter alia*, FLSA § 206.

209.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

210.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE FLSA:  FAILURE TO PAY OVERTIME**

211.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

212.    Plaintiffs and the FLSA Collective are employees under the FLSA and all other applicable statutes or regulations.

213.    Defendants are employers under the FLSA and all other applicable statutes or regulations.

214.    Plaintiffs and the FLSA Collective have worked extensive overtime hours.

215.    The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

216.    Plaintiffs and the FLSA Collective were not exempt from the requirement that their employer pay them overtime compensation under the FLSA, and thus they are entitled to be paid overtime compensation by Defendants for all overtime hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

217.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the FLSA Collective at a rate not less

than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

218.    Defendants denied Plaintiffs and the FLSA Collective overtime wages in at least three ways.

219.    First, Defendants engaged in a pattern and practice of unlawfully reducing Plaintiffs' and the FLSA Collective's recorded hours worked when issuing paychecks, as reflected by comparing Plaintiffs' and the FLSA Collective's Humanity records with their earnings statements.

220.    Second, Defendants engaged in a policy and practice of requiring Plaintiffs and the FLSA Collective to perform compensable work off-the-clock, including, *inter alia*, by requiring Plaintiffs and the FLSA Collective to wait to receive their paychecks in person.

221.    Third, Defendants engaged in a policy and practice of unlawfully deducting from Plaintiffs' and the FLSA Collective's hours worked for time spent taking meal breaks, even where no such meal breaks were given.

222.    As a result of Defendants' failure to compensate Plaintiffs and the FLSA Collective at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated, *inter alia*, FLSA § 207.

223.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

224.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE FLSA:  LATE PAYMENT OF WAGES

225.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

226.    Plaintiffs and the FLSA Collective are employees under the FLSA and all other applicable statutes or regulations.

227.    Defendants are employers under the FLSA and all other applicable statutes or regulations

228.    The FLSA requires covered employers, including Defendants, to pay employees all compensation earned in a particular workweek on the regular payday for the period in which such workweek ends.

229.    Plaintiffs and the FLSA Collective were not exempt from the requirement that their employer timely pay them their wages.

230.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to pay Plaintiffs and the FLSA Collective all compensation earned in a particular workweek on the regular payday for the period in which such workweek ends.

231.    As a result of Defendants' failure to pay Plaintiffs and the FLSA Collective all compensation earned in a particular workweek on the regular payday for the period in which such workweek ends, Defendants have violated, *inter alia*, 29 C.F.R. § 778.106.

232.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the FLSA Collective in accordance with the FLSA.

233.    Defendants' violations of the FLSA have significantly damaged Plaintiffs and the FLSA Collective and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL:  FAILURE TO PAY FOR ALL HOURS WORKED

234.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

235.    Plaintiffs and the NYLL Class are employees under the NYLL and all other applicable statutes or regulations.

236.    Defendants are employers under the NYLL and all other applicable statutes or regulations.

237.    The NYLL requires covered employers, including Defendants, to pay employees at their agreed upon regular rate of pay for all hours worked under 40 hours in a workweek.

238.    Plaintiffs and the NYLL Class were not exempt from the requirement that their employer pay them at their agreed upon regular rate of pay, and thus they are entitled to be paid at their agreed upon regular rate of pay for all hours worked under 40 hours in a workweek during the full statute of limitations period.

239.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the NYLL Class at their agreed upon regular rate of pay for all hours worked under 40 hours in a workweek.

240.    Defendants denied Plaintiffs and the NYLL Class compensation for all hours worked in at least three ways.

241.    First, Defendants engaged in a pattern and practice of unlawfully reducing Plaintiffs' and the NYLL Class's recorded hours worked when issuing paychecks, as reflected by comparing Plaintiffs' and the NYLL Class's Humanity records with their earnings statements.

242.     Second, Defendants engaged in a policy and practice of requiring Plaintiffs and the NYLL Class to perform compensable work off-the-clock, including, *inter alia*, by requiring Plaintiffs and the NYLL Class to wait to receive their paychecks in person.

243.     Third, Defendants engaged in a policy and practice of unlawfully deducting from Plaintiffs' and the NYLL Class's hours worked for time spent taking meal breaks, even when no such meal breaks were given.

244.     As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at their agreed upon regular rate of pay for all hours worked under 40 hours in a workweek, Defendants have violated the NYLL.

245.     Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

246.     Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL:  FAILURE TO PAY OVERTIME

247.     Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

248.     Plaintiffs and the NYLL Class are employees under the NYLL and all other applicable statutes or regulations.

249.     Defendants are employers under the NYLL and all other applicable statutes or regulations.

250.     Plaintiffs and the NYLL Class have worked extensive overtime hours.

251.   The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

252.   Plaintiffs and the NYLL Class were not exempt from the requirement that their employer pay them overtime compensation under the NYLL, and thus they are entitled to be paid overtime compensation by Defendants for all overtime hours worked in excess of 40 hours in a workweek during the full statute of limitations period.

253.   Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the NYLL Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

254.   Defendants denied Plaintiffs and the NYLL Class overtime wages in at least three ways.

255.   First, Defendants engaged in a pattern and practice of unlawfully reducing Plaintiffs' and the NYLL Class's recorded hours worked when issuing paychecks, as reflected by comparing Plaintiffs' and the NYLL Class's Humanity records with their earnings statements.

256.   Second, Defendants engaged in a policy and practice of requiring Plaintiffs and the NYLL Class to perform compensable work off-the-clock, including, *inter alia*, by requiring Plaintiffs and the NYLL Class to wait to receive their paychecks in person.

257.   Third, Defendants engaged in a policy and practice of unlawfully deducting from Plaintiffs' and the NYLL Class's hours worked for time spent taking meal breaks, even where no such meal breaks were given.

258.    As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek, Defendants have violated the NYLL.

259.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

260.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL:  LATE PAYMENT OF WAGES**

261.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

262.    Plaintiffs and the NYLL Class are employees under the NYLL and all other applicable statutes or regulations.

263.    Defendants are employers under the NYLL and all other applicable statutes or regulations.

264.    The NYLL requires covered employers, including Defendants, to pay employees in accordance with agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer.

265.    Defendants designated the Thursday following each 14-day pay period as Plaintiffs' and the NYLL Class's regularly scheduled pay day.

266.    Plaintiffs and the NYLL Class were not exempt from the requirement that their employer timely pay them their wages.

267.    Throughout the full statute of limitations period, Defendants have engaged in a

policy and practice of failing to pay Plaintiffs and the NYLL Class all compensation earned in a particular pay period on their regularly scheduled pay day.

268.    As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class all compensation earned in a particular workweek on the regular payday for the period in which such workweek ends, Defendants have violated, *inter alia*, NYLL § 191.

269.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

270.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL:  MEAL BREAKS**

271.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

272.    Plaintiffs and the NYLL Class are employees under the NYLL and all other applicable statutes or regulations.

273.    Defendants are employers under the NYLL and all other applicable statutes or regulations.

274.    The NYLL requires covered employers, including Defendants, provide meal breaks to employees who work shifts lasting six hours or longer.

275.    The NYLL also prohibits employers from making deductions from employees' wages for time spent on meal breaks.

276.    Plaintiffs and the NYLL Class were not exempt from the requirements that their employer provide them with meal breaks and not make deductions from their wages for time spent on meal breaks.

277.    Time spent taking meal breaks is considered hours worked under the NYLL.

278.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully deducting from Plaintiffs' and the NYLL Class's hours worked for time spent taking meal breaks, even where no such meal breaks were given.

279.    As a result of Defendants' unlawful deductions from Plaintiffs' and the NYLL Class's wages, Defendants have violated, *inter alia*, NYLL §§ 162 and 193.

280.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

281.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL:  UNLAWFUL DEDUCTIONS FROM WAGES**

282.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

283.    Plaintiffs and the NYLL Class are employees under the NYLL and all other applicable statutes or regulations.

284.    Defendants are employers under the NYLL and all other applicable statutes or regulations.

285.    The NYLL prohibits covered employers, including Defendants, from making certain deductions from wages.

286.     Plaintiffs and the NYLL Class were not exempt from the requirement that their employer not make unlawful deductions from their wages.

287.     Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of making unlawful deductions from Plaintiffs' and the NYLL Class's wages, including by reducing their recorded hours worked with no explanation and making unlawful deductions for meal breaks.

288.     As a result of Defendants' unlawful deductions from Plaintiffs' and the NYLL Class's wages, Defendants have violated, *inter alia*, NYLL § 193.

289.     Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

290.     Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## NINTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL:  EARNINGS STATEMENTS

291.     Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

292.     Plaintiffs and the NYLL Class are employees under the NYLL and all other applicable statutes or regulations.

293.     Defendants are employers under the NYLL and all other applicable statutes or regulations.

294.     The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following:  the dates of work covered by that payment of wages;  name of employee;  name of employer;  address and phone

number of employer;  rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  gross wages;  deductions;  allowances, if any, claimed as part of the minimum wage;  and net wages."

295.    Plaintiffs and the NYLL Class were not exempt from the requirement that their employer provide them with proper earnings statements.

296.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide earnings statements and providing inaccurate and/or incomplete earnings statements.

297.    As a result of Defendants' failure to furnish accurate earnings statements to Plaintiffs and the NYLL Class, Defendants have violated, *inter alia*, NYLL §§ 195.

298.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper earnings statements to Plaintiffs and the NYLL Class in accordance with the NYLL.

299.    Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover $250 for each work day the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the NYLL Class, respectfully request that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal and state law;

B.    Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.     Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.     Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the NYLL Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

E.     Designate Plaintiffs Casey Morell and Raymond Osorio as representatives of the NYLL Class, and their counsel of record as class counsel;

F.     Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

G.     Determine the damages sustained by Plaintiffs and the NYLL Class as a result of Defendant's violations of the NYLL, and award those damages against Defendants and in favor of Plaintiffs and the NYLL Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.     Award Plaintiffs, the FLSA Collective, and the NYLL Class an additional equal amount as liquidated damages because Defendants' violations were willful and/or without a good faith basis;

I.      Award Plaintiffs, the FLSA Collective, and the NYLL Class their reasonable attorneys' fees and costs and disbursements in this action including, but not limited to, any accountants' or experts' fees; and

J.      Grant Plaintiffs, the FLSA Collective, and/or the NYLL Class such other and further relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, of themselves, the FLSA Collective, and the NYLL Class, hereby demand a trial by jury on all issues of fact and damages.

Dated: February 12, 2018                        **FARUQI & FARUQI, LLP**

By:     */s/ Innessa M. Huot*
　　　Innessa Melamed Huot (IM-2886)
　　　Alex J. Hartzband (AH-0934)

685 Third Avenue, 26th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
ihuot@faruqilaw.com
ahartzband@faruqilaw.com

*Attorneys for Plaintiffs and the Proposed
FLSA Collective and NYLL Class*